# United States District Court

## EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| DRIVELINE RETAIL MERCHANDISING, INC. | § § § | |
| | § | Civil Action No. 4:17-CV-00423 |
| v. | § | Judge Mazzant |
| | § | |
| PEPSICO, INC. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court are Defendant PepsiCo, Inc.'s ("PepsiCo") Motion for Judgment on the Pleadings (Dkt. #17), Plaintiff/Counterclaim-Defendant Driveline Retail Merchandising, Inc.'s ("Driveline") Motion for Judgment on the Pleadings on Defendant/Counterclaim-Plaintiff's Counterclaims (Dkt. #23), Plaintiff/Counterclaim Defendant's Motion for Partial Summary Judgment (Dkt. #39), and Defendant PepsiCo's Motion for Summary Judgment (Dkt. #40). Having reviewed the relevant pleadings and motions, the Court finds that the parties' motions for judgment on the pleadings should be denied as moot, PepsiCo's summary judgment should be granted in part, and Driveline's partial summary judgment should be granted in part.

## BACKGROUND

Driveline is a corporation that is in the business of providing merchandising services, technology services, and consulting services to manufacturers and retailers. PepsiCo and its affiliates are in the business of manufacturing food products and distributing these products to various retail outlets throughout the country. Driveline contracted with PepsiCo to provide sales and retail merchandising assistance and services to PepsiCo. Relevant to the current dispute, the parties culminated their agreement into two contracts.

First, on January 1, 2015, the parties entered into the Master Agreement for Sales and Merchandising Services ("the 2015 Agreement"), which was in effect from January 1, 2015 through December 31, 2016 (Dkt. #40, Exhibit 2 at p. 1). Under the terms of the 2015 Agreement, Driveline would perform sales and retail merchandising services for PepsiCo, according to the requirements set forth in the contract, and would send PepsiCo an invoice for such services (Dkt. #40, Exhibit 2 at p. 1). The invoices were subject to acceptance by PepsiCo and, if accepted, the "[p]ayment terms will be net sixty (60) days from the latter of the date the invoice is received by [PepsiCo]." (Dkt. #40, Exhibit 2 at p. 1). However, if PepsiCo reasonably disputed any of the services reported on the invoice, PepsiCo had the right to refuse payment until the dispute was resolved (Dkt. #40, Exhibit 2 at p. 1). Moreover, the 2015 Agreement provided for a rebate if PepsiCo paid a certain amount in invoices. Item 14 of Exhibit A to the 2015 Agreement dictated as follows:

| **14.** Rebate (based on total annual spend): | Yes | Total Spend is not rounded |
|---|---|---|
| $1 – $1.499MM | 0% | |
| $1.5MM – $3.99MM | 1% | Back to $1 |
| $4 – $7.99MM | 3% | Back to $1-Amount are non-cumulative; only one rebate (at the highest level based |
| >$7.99MM | 5% | upon total spend, will accrue) |

(Dkt. #40, Exhibit 2 at p. 11).

During 2015 and 2016, while the 2015 Agreement was in effect, Driveline sent PepsiCo invoices and PepsiCo made payments on the invoices. In 2015, PepsiCo paid Driveline $5,303,050.48. In 2016, PepsiCo paid Driveline $4,023,478.03.[1] Driveline did not make any credits or payments in rebates to PepsiCo.

---

[1] Driveline contests that all these payments are eligible for rebates, which the Court addresses later.

The parties entered into its second Master Agreement for Sales and Merchandising Services on February 1, 2017 ("the 2017 Agreement"). The terms of the 2017 Agreement were much the same as the 2015 Agreement; however, the parties made a few adjustments to the terms. Relevant to the case, the parties changed the terms of the rebate to exclude from rebate consideration "fulfillment & print charges and undisputed payments made more than 7 business days after the payment terms" (Dkt. #40, Exhibit 3 at p. 10). On March 24, 2017, Driveline submitted an invoice to PepsiCo in the amount of $390,881.68 for services provided under the 2017 Agreement ("the 2017 Invoice"). PepsiCo paid $105,691.82 of the 2017 Invoice to Driveline and represented that it was withholding the remaining $285,189.86 as the amount Driveline owed PepsiCo in rebates under the terms of the 2015 Agreement.

Based on this alleged partial payment, on June 15, 2017, Driveline filed suit for breach of the 2017 Agreement and, in the alternative, unjust enrichment or quantum meruit (Dkt. #1). PepsiCo answered suit and raised the affirmative defenses of setoff and promissory estoppel (Dkt. #7 at pp. 7–8). PepsiCo additionally asserted counterclaims against Driveline for breach of the 2015 Agreement and declaratory judgment (Dkt. #7 at pp. 8–12). Driveline filed an answer to the counterclaims and asserted the affirmative defenses of material breach of the 2015 Agreement, failure to comply with conditions precedent, waiver, and offset (Dkt. #14 at pp. 8–9).

On October 16, 2017, PepsiCo filed its motion for judgment on the pleadings (Dkt. #17) and on November 9, 2017, Driveline filed its motion for judgment on the pleadings (Dkt. #23).[2] Then, on January 19, 2018, Driveline filed it motion for partial summary judgment (Dkt. #39). On February 9, 2018, PepsiCo filed its response (Dkt. #43) and Driveline filed its reply on February 20, 2018 (Dkt. #46). Additionally, on January 19, 2018, PepsiCo filed a motion for summary

---

[2] Based on the Court's rulings on the parties' motions for summary judgment, the Court finds that the parties' motions for judgment on the pleadings moot.

judgment (Dkt. #40). On February 12, 2018, Driveline filed a response (Dkt. #44) and PepsiCo filed a reply on February 16, 2018 (Dkt. #45).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986). Substantive law identifies which facts are material. *Id.* The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment." *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact. FED. R. CIV. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323. If the movant bears the burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Once the movant has carried its burden, the

nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

## ANALYSIS

Both parties have moved for summary judgment in this case. Driveline moved for partial summary judgment on PepsiCo's liability for breach of the 2017 Agreement and on PepsiCo's counterclaims for breach of the 2015 Agreement and declaratory judgment. PepsiCo moved for summary judgment on Driveline's claim for breach of the 2017 Agreement, Driveline's claim for unjust enrichment or quantum meruit, on its own claims for breach of the 2015 Agreement, and its claim for declaratory judgment. Because the claims are interrelated, the Court addresses the motions together.

### I. Breach of the 2015 Agreement

Before addressing whether there is a breach of the 2015 Agreement, the Court identifies what the contract requires. Neither party contests the basic requirements of the contract.[3] The

---

[3] The parties do dispute certain terms of the contract, which the Court addresses later.

2015 Agreement requires PepsiCo to make payments for services rendered by Driveline within sixty days of receiving an invoice from Driveline. Further, if PepsiCo spends at least $1,500,000.00 based on total annual spend, PepsiCo is entitled to a rebate.

PepsiCo filed a counterclaim against Driveline arguing that Driveline breached the 2015 Agreement by failing to pay or credit PepsiCo rebates that PepsiCo maintains it is owed. Driveline asserts the affirmative defense that PepsiCo materially breached the 2015 Agreement by failing to make timely payments such that Driveline did not need to perform under the 2015 Agreement.[4] PepsiCo moved for summary judgment on its counterclaim arguing that it has proven its breach of contract claim as a matter of law. Additionally, Driveline moved for summary judgment against PepsiCo's breach of contract claim arguing that PepsiCo cannot prove the elements of its claim. The Court will address each motion.

### A. PepsiCo's Motion for Summary Judgment

PepsiCo argues that the evidence conclusively establishes all four elements of its breach of contract claim. Thus, PepsiCo asserts that it has proven its breach of contract claim as a matter of law. Driveline maintains that there are genuine issues of material fact surrounding its affirmative defense that PepsiCo materially breached the 2015 Agreement and accordingly, the Court should deny PepsiCo's motion.

Under Texas law, a breach of contract claim requires a party to prove: (1) the existence of a valid contract; (2) performance or tendered performance by the party; (3) breach of the contract by the opposing party; and (4) damages sustained by the party as a result of the breach. *Smith*

---

[4] Driveline also asserts that PepsiCo waived its ability to assert a claim for rebates based on the 2015 Agreement because it made late payments and because it entered into the 2017 Agreement. As will be further discussed, based on the language of the 2015 Agreement and the fact that there is no written and signed waiver of the Agreement, the Court finds that late payments did not constitute a waiver of the 2015 Agreement. Nevertheless, there is a genuine issue of material fact as to whether entering the 2017 Agreement was a waiver of entitlement to rebates under the 2015 Agreement.

*Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (citation omitted); *Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n*, 205 S.W.3d 46, 55 (Tex. App.—Dallas 2006, pet. denied). Neither party disputes that the 2015 Agreement is a valid contract. However, Driveline challenges the remaining elements of PepsiCo's breach of contract claim. PepsiCo avers that it has conclusively established all of the elements.

### 1. Performance or Tendered Performance by PepsiCo

Driveline argues that this element is not met because PepsiCo materially breached the 2015 Agreement by submitting late payments.[5] PepsiCo counters that it fully performed its obligations under the 2015 Agreement and that any alleged late payment is not relevant to whether or not Driveline owed rebates under the 2015 Agreement because the payment of rebates is not contingent on timely payments pursuant to the language of the 2015 Agreement.

Whether or not the payment of rebates is contingent on timely payments, "'[i]t is a well[-]established rule that a party to a contract who is himself in default cannot maintain a suit for its breach.' 'Generally, one party's breach does not excuse the other's performance *unless the breach is material*.'" *IAS Servs. Grp., LLC v. Jim Buckley & Assocs., Inc.*, Case No. SA-14-CA-180-FB, 2015 WL 13650516, at *10 (W.D. Tex. Sept. 18, 2015) (emphasis in original) (quoting *In re Trevinio*, 535 B.R. 110, 155 (Bankr. S.D. Tex. 2015) (citing Texas cases)). "'[W]hen one party to a contract commits a material breach of that contract, the other party is discharged or excused from any obligation to perform.'" *X Techs., Inc. v. Marvin Test Sys., Inc.*, 719 F.3d 406, 413 (5th Cir. 2013) (quoting *Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691, 692 (Tex. 1994)).

---

[5] Instead of arguing that it did not make late payments under the 2015 Agreement, PepsiCo argues that it is irrelevant. Because PepsiCo did not respond to this argument, the Court presumes that PepsiCo does not controvert the facts set out by Driveline and PepsiCo and has no evidence to offer in opposition to the argument. LOCAL RULE CV-7(d) ("A party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by the movant and has no evidence to offer in opposition to the motion."). Hence, the evidence demonstrates that PepsiCo made late payments under the 2015 Agreement.

"Whether a party's breach is so material as to render the contract unenforceable is ordinarily a question of fact to be determined based on several factors." *STR Constructors, Ltd. v. Newman Tile, Inc.*, 395 S.W.3d 383, 387 (Tex. App.—El Paso 2013, no pet.) (citing *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 199 (Tex. 2004)). Some relevant factors to consider in determining whether a breach is material include:

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
> (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
> (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of the circumstances including any reasonable assurances; [and]
> (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Id.* (alteration in original) (quoting *Mustang Pipeline*, 134 S.W.3d at 199); RESTATEMENT (SECOND) OF CONTRACTS § 241 (1981).

The evidence and the arguments in front of the Court demonstrate payments under the 2015 Agreement are due within sixty days of receiving the invoice and that PepsiCo made payments late under the 2015 Agreement. However, neither party has provided any argument or evidence to suggest whether PepsiCo's late payments are a material breach of the agreement discharging Driveline's rebate obligations. Indeed, Driveline did not move for summary judgment on this issue because it maintains that there are genuine issues of material fact surrounding whether PepsiCo materially breached the 2015 Agreement. Accordingly, the Court finds that PepsiCo's motion for summary judgment as to its breach of contract claim should be denied.

## 2. Breach of the 2015 Agreement by Driveline

Although the Court already found the motion should be denied as to performance under the 2015 Agreement, the Court is required to determine "'what conduct is required by the parties.'" *X Techs., Inc.*, 719 F.3d at 413–14 (quoting *Meek v. Bishop Peterson & Sharp, P.C.*, 919 S.W.3d 805, 808 (Tex. App.—Houston [14th Dist.] 1996, writ denied)). As a result, the Court will consider arguments regarding what conduct constitutes a breach of the 2015 Agreement.

PepsiCo asserts that the 2015 Agreement requires Driveline to pay PepsiCo rebates. Driveline counters that it is not required to pay PepsiCo any rebates because PepsiCo made late payments, which totaled $2,013,907.50 in 2015 and $243,683.71 in 2016. According to Driveline, while the 2015 Agreement is silent as to whether late paid invoices are eligible for rebates, the parties' course of dealings and performance demonstrate that late paid invoices are not eligible. Driveline argues that the evidence shows that it consistently maintained that late payments were not eligible for rebates. PepsiCo asserts that reliance on any extrinsic evidence is improper because the terms of the 2015 Agreement are clear and unambiguous. Driveline maintains that even if the terms of the contract are unambiguous, the Court is permitted to look at the parties' course of dealings and course of performance to determine whether the late payments are eligible for rebates. In support of its argument, Driveline refers to the Restatement (Second) of Contracts Section 223 and the comments attached thereto.

Section 223 and its comments relate to parties' course of dealings. A course of dealing is distinguishable from a course of performance. A "'[c]ourse of dealing,' . . . refers to a sequence of conduct between the parties concerning previous transactions, meaning that a course of dealing occurs *prior* to contract formation." *Orthoflex, Inc. v. ThermoTek, Inc.*, 983 F. Supp. 2d 866, 877

n.14 (N.D. Tex. 2013) (emphasis in original) (citing T<small>EX</small>. B<small>US</small>. & C<small>OM</small>. C<small>ODE</small> § 1.303(b)).[6]  In contrast, a "'[c]ourse of performance' refers to a sequence of conduct between the parties to a particular transaction that takes place during the performance of the contract at issue, meaning that a course of performance occurs *after* contract formation." *Id.* (emphasis in original) (citing T<small>EX</small>. B<small>US</small>. & C<small>OM</small>. C<small>ODE</small> § 1.303(a)).  Here, the evidence Driveline submitted in support of its argument that late payments were not considered for rebate payments is conduct that occurred after the formation of the 2015 Agreement.  Accordingly, such conduct is considered course of performance, not course of dealing and Section 223 is immaterial to the Court's analysis.  Thus, the question remains as to whether the Court can consider the parties' course of performance.

### a.  Language of the Contract

PepsiCo asserts that the contract is unambiguous and, thus, the Court should not look to extrinsic evidence.  "An unambiguous contract must be interpreted by the [C]ourt as a matter of law." *Sundaram v. Nemeth*, No. 1:06-CV-712, 2008 WL 80017, at *8 (E.D. Tex. Jan. 7, 2008) (citing *SAS Inst., Inc. v. Breitenfeld,* 167 S.W.3d 840, 841 (Tex. 2005)).  If a contract "is worded so that a court can give it a certain or definite legal meaning or interpretation, it is not ambiguous." *Id.*  When a contract is unambiguous, extrinsic evidence "'will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imports.'" *Skyland Developers, Inc. v. Sky Harbor Assocs.,* 586 S.W.2d 564, 568 (Tex. App.— Corpus Christi 1979, no writ) (quoting *Universal C.I.T. Credit Corp. v. Daniel*, 243 S.W.2d 154, 157 (Tex. 1951)).  The Court must enforce the unambiguous language in a contract as written, and

---

[6] The Court notes that even though the Northern District of Texas cites to the Uniform Commercial Code, this is the understanding with services contracts as well, that are not covered under the Uniform Commercial Code.  *See* R<small>ESTATEMENT</small> (S<small>ECOND</small>) <small>OF</small> C<small>ONTRACTS</small> § 223 (emphasis added) ("A course of dealing is a sequence of *previous* conduct between parties to an agreement which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct.").

the applicable standard is the "objective intent" evidenced by the language used, rather than the subjective intent of the parties. *See Sun Oil Co. v. Madeley,* 626 S.W.2d 726, 731–32 (Tex. 1981).

Contract terms "are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense." *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005). The Court's primary concern is to enforce the parties' intent as expressed in the contract. *Sundaram*, 2008 WL 80017 at *9. When construing a contract, the intention of the parties is to be gathered from the instrument as a whole. *See Seagull Energy*, 207 S.W.3d at 345; *SAS Inst.*, 167 S.W.3d at 841. The "[C]ourt is bound to read all parts of a contract together to ascertain the agreement of the parties." *Forbau v. Aetna Life Ins. Co.,* 876 S.W.2d 132, 133 (Tex. 1994). "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *SAS Inst., Inc.,* 167 S.W.3d at 841.

Here, the relevant portion of the contract states:

| **14.** Rebate (based on total annual spend): | Yes | Total Spend is not rounded |
|---|---|---|
| $1 – $1.499MM | 0% | |
| $1.5MM – $3.99MM | 1% | Back to $1 |
| $4 – $7.99MM | 3% | Back to $1-Amount are non-cumulative; only one rebate (at the highest level based |
| >$7.99MM | 5% | upon total spend, will accrue) |

(Dkt. #40, Exhibit 2 at p. 11). While the contract is silent as to whether late payments are eligible for rebate consideration, this silence does not create an ambiguity. Timely payments were simply not a condition for the receipt of rebates. Accordingly, the reasonable reading of the 2015 Agreement states that Driveline was required to pay rebates based on the amounts presented in Item 14 of the term sheet, regardless of whether PepsiCo made payments timely.

However, "[w]here an agreement involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement." RESTATEMENT (SECOND) OF CONTRACTS § 202(4) (1981). "The parties to an agreement know best what they meant, and their action under it is often the strongest evidence of their meaning. But such 'practical construction' is not conclusive of meaning. Conduct must be weighed in the light of the terms of the agreement and their possible meanings." RESTATEMENT (SECOND) OF CONTRACTS § 202 cmt. g (1981). Further, the repeated occasions for performance rule "does not apply to action on a single occasion or to action of one party only; in such cases the conduct of a party may be evidence against him that he had knowledge or reason to know of the other party's meaning, but self-serving conduct is not entitled to weight." RESTATEMENT (SECOND) OF CONTRACTS § 202 cmt. g (1981).

Here, Driveline presented evidence of three emails that Dan Colvard, acting on behalf of Driveline, sent to PepsiCo: (1) the October 29, 2015 email states that "[t]ypically on-time/late invoice payments will have some effect on rebates . . . ."; (2) the February 15, 2016 email contains the language "[s]ince the rebate is affected by past dues . . . ."; and (3) the May 5, 2016 email states that "PepsiCo will enhance its diligence in getting us paid on time. Driveline will likewise enhance its notification process by providing . . . notification(s) for any invoices that go unpaid past the 60-day contract terms. This will give PepsiCo 15 days . . . to remedy the past due(s) and still qualify for rebates." (Dkt. #43, Exhibit 1 at pp. 33, 38, 43). Driveline additionally presented evidence that PepsiCo submitted late payments during 2015 and 2016. If this is sufficient evidence to create a course of performance that the Court should consider, such conduct still needs to be looked at in light of the actual terms of the 2015 Agreement. The terms of the 2015 Agreement

did not make timely payment of invoices a condition to receive rebates. The "'[c]ourse of performance' doctrine is . . . not a means of creating contract obligations from whole cloth." *Wales v. Alliant Techsystems, Inc.*, No. 1:06-CV-622-TH, 2008 WL 11348350, at *3 (E.D. Tex. Oct. 24, 2008) (citing U.C.C. §§ 1-205, 2-208; *Maxon Corp. v. Tyler Pipe Indus., Inc.*, 497 N.E.2d 570, 575 (Ind. Ct. App. [2d Dist] 1986)). Therefore, even if this evidence is sufficient to create a course of performance, it is not conclusive of the meaning of the 2015 Agreement in this case.

### b. Modification or Waiver

Even though the course of performance does not comport with the terms of the 2015 Agreement, it is possible for a course of performance to serve as a modification or waiver of an agreement. "Where it is unreasonable to interpret the contract in accordance with the course of performance, the conduct of the parties may be evidence of an agreed modification or of a waiver by one party. Or there may be simply a mistake which should be corrected." RESTATEMENT (SECOND) OF CONTRACTS § 202 cmt. g (1981).

Nonetheless, the 2015 Agreement states:

**23. <u>MISCELLANEOUS.</u>**

. . .

- No modification, amendment, supplement to, or waiver of this Agreement or any of its provision will be binding upon the parties hereto unless made in writing and duly signed by both [Driveline] and PepsiCo.

(Dkt. #43, Exhibit 1 at p. 13). Driveline did not submit any evidence that the parties entered into a written and signed modification or waiver of the 2015 Agreement. Ultimately, if the evidence Driveline submitted is enough to create a course of performance between the parties, it does not affect the interpretation of, modify, or work as a waiver of the 2015 Agreement.

### 3. Damages–Rebate Calculation

Driveline additionally challenges the amount of damages PepsiCo is claiming based on its interpretation of the 2015 Agreement.[7] Driveline disputes the amount of rebates owed because "total annual spend" is not defined in the 2015 Agreement. Driveline maintains that PepsiCo's calculation includes payments on invoices from 2014, fulfillment charges for printing and shipping costs, and charges for invoices not submitted by Driveline. Driveline avers that none of these charges were eligible for rebates. PepsiCo counters that by using the plain meaning of "total annual spend" all of these charges are properly included in the calculation.

Again, contract terms "are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense." *Valence Operating Co.*, 164 S.W.3d at 662. Here, nothing in the contract demonstrates that terms should be read in a "technical or different sense." *Id.* "Courts may look to dictionaries to discern the meaning of a commonly used term that the contract does not define." *In re Davenport*, 522 S.W.3d 452, 457 (Tex. 2017). The plain, ordinary, and generally accepted meaning of "total" is "comprising or constituting a whole"; the meaning of "annual" is "covering the period of a year"; and "spend" is "to use up or pay out." MERRIAM WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/total (May 17, 2018); MERRIAM WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/annual (May 17, 2018); MERRIAM WEBSTER ONLINE DICTIONARY, https://www.merriam-webster.com/dictionary/spend (May 17, 2018). Reading these together, "total annual spend" is the whole amount paid out by PepsiCo to Driveline over the period of a year.

---

[7] Driveline also argues that PepsiCo cannot prove damages as a matter of law. The Court subsequently addresses this argument when discussing Driveline's motion for summary judgment on PepsiCo's breach of contract claim.

Accordingly, if invoices from 2014 were paid in 2015, then the invoices would become part of the 2015 "total annual spend." Further, the term "total annual spend" did not contain a limitation excluding fulfillment and shipping costs.[8] According to the terms of the 2015 Agreement, these charges are included in the 2015 "total annual spend." Finally, as to invoices not submitted by Driveline, while Driveline's only evidence of this assertion is an affidavit, the Court notes that Driveline must simply demonstrate a genuine issue of material fact on the issue because it is not Driveline's motion for summary judgment. As the Court identified, "total annual spend" is the whole amount paid out by PepsiCo to Driveline over the period of a year. If there are any invoices not submitted by Driveline for services Driveline did not render, then these invoices would not be included in the rebate calculation. However, this is a fact issue that is not for the Court to decide at this time. For the reasons previously stated, PepsiCo's motion for summary judgment should be denied as to its claim for breach of the 2015 Agreement.

### B. Driveline's Motion for Summary Judgment

In Driveline's motion for summary judgment, Driveline asks the Court to find that PepsiCo's claim for breach of contract is not legally viable because it cannot prove that it sustained any damages. Driveline argues that PepsiCo cannot prove any damages as a result of the alleged breach of the 2015 Agreement by failing to pay rebates because PepsiCo has withheld the amount of the rebates from the payment of the 2017 Agreement. Thus, Driveline asserts awarding PepsiCo the amount of the rebates in this case would result in a double recovery. PepsiCo counters that it can prove damages in this case because it is entitled to the benefit of the bargain under the 2015 Agreement—$285,189.86, as well as interest at a legal rate. The Court previously found that there is a fact issue as to whether Driveline owed PepsiCo rebates under the 2015 Agreement, and as

---

[8] The parties added this limitation to the 2017 Agreement.

will be further detailed, the Court finds that PepsiCo was not legally entitled to withhold the $285,189.86. Accordingly, fact issues remain as to whether PepsiCo sustained any damages as a result of any alleged breach. The Court finds that Driveline's motion for summary judgment as to PepsiCo's breach of contract claim should be denied.

### C. Attorneys' Fees

PepsiCo also moved for summary judgment on its claim for attorneys' fees because it maintained that it was able to conclusively establish its breach of contract claim. Because the Court finds that it did not prove its breach of contract claim as a matter of law, it similarly finds that it has failed to prove it is entitled to attorneys' fees as a matter of law. Therefore, the Court finds that PepsiCo's motion for summary judgment on its attorney' fees should be denied.

## II.     Breach of the 2017 Agreement

The 2017 Agreement requires that PepsiCo pay Driveline within sixty days of receiving an invoice from Driveline. Driveline sent PepsiCo the 2017 Invoice and PepsiCo only made a partial payment of the amount owed. Driveline sued PepsiCo for breach of the 2017 Agreement. PepsiCo responded by asserting the affirmative defense of a setoff. Driveline moved for summary judgment asking the Court to find that PepsiCo breached the 2017 Agreement. PepsiCo also filed a motion for summary judgment on Driveline's breach of contract claim arguing that it was legally entitled to set off the amount it withheld as the money owed pursuant to the 2015 Agreement.

### A. Driveline's Motion for Summary Judgment

Driveline argues that it can conclusively establish all four elements of its breach of contract claim. PepsiCo argues that it cannot establish the third element—that PepsiCo breached the agreement—because PepsiCo was legally entitled to withhold $285,189.86 from the 2017 Invoice.

Again, to prove a breach of contract claim a party must show: (1) the existence of a valid contract; (2) performance or tendered performance by the party; (3) breach of the contract by the opposing party; and (4) damages sustained by the party as a result of the breach. *Smith Int'l, Inc.*, 490 F.3d at 387 (citation omitted); *Hackberry Creek Country Club, Inc.*, 205 S.W.3d at 55. "'Breach' is the failure, *without legal excuse*, to perform any promise that forms all of part of an agreement." *ExxonMobil Global Servs Co. v. Gensym Corp. & Versata Enters.*, 54 F. Supp. 3d 707, 711 (W.D. Tex. 2014) (emphasis added) (citing *Bernal v. Garrison*, 818 S.W.2d 79, 83 (Tex. App.—Corpus Christi, 1991 writ denied)).

Under Texas law, "mutual debts do not extinguish each other." *Mazaheri v. Simons Petroleum, Inc.*, No. 05-05-00719-CV, 2006 WL 1738275, at *4 (Tex. App.—Dallas 2006, pet denied) (citing *Permian Petroleum Co. v. Petroleos Mexicanos*, 934 F.2d 635, 653 (5th Cir. 1991)). "Mutual debts arising from separate and distinct obligations are not to be offset one against the other in the absence of agreement or determined by judicial action." *Id.* (citing *Crest Const., Inc. v. Murray*, 888 S.W.2d 931, 952 (Tex. App.—Beaumont 1994, rev'd on other grounds).

Here, nothing in either the 2015 Agreement or the 2017 Agreement establishes that any debt may be offset against another debt. Additionally, PepsiCo has not produced any evidence to suggest that Driveline and PepsiCo entered into another agreement allowing for a debt to be offset against another. Finally, PepsiCo has not produced any evidence to suggest that there was a previous judicial action that determined PepsiCo was entitled to offset its damages. Thus, PepsiCo's actions were not legally excused.

The 2017 Agreement requires payment to be made on an invoice within sixty days of receipt of the invoice. Driveline sent PepsiCo the 2017 Invoice and PepsiCo failed to make full

payment of the 2017 Invoice within sixty days. Nonetheless, PepsiCo did raise the affirmative defense of a setoff.

> Setoff is a form of equitable counterclaim which brings together obligations of parties opposing each other, and *by judicial action*, makes each obligation extinguish the other. *See* 67 Tex.Jur.3d § 3 *Setoffs, Counterclaims, and Cross Actions* (1989). The object of equitable setoff is "to adjust the demands between the parties and allow a recovery of only the balance that is due." *Anderson v. Vinson Exploration, Inc.*, 832 S.W.2d 657, 666 (Tex.App.—El Paso 1992, writ denied) (citing *CPS Int'l, Inc. v. Harris & Westmoreland*, 784 S.W.2d 538, 544 (Tex.App.—Texarkana 1990, no writ)). "In order for one demand to be set off against another, both demands must mutually exist between the same parties." *Dallas/Fort Worth Airport Bank v. Dallas Bank & Trust Co.*, 667 S.W.2d 572, 575 (Tex.App.—Dallas 1984, no writ) (citing *Western Shoe Co. v. Amarillo Nat'l Bank*, 127 Tex. 369, 94 S.W.2d 125, 128 (Comm'n App.1936, opinion adopted)). Indeed, setoff "is proper only where demands are mutual, between the same parties, and in the same capacity or right." *Brook Mays Organ Co., Inv. B. Sandock*, 551 S.W.2d 160, 166 (Tex.Civ.App.—Beaumont 1977, writ ref'd n.r.e.).

*Capital Concepts Props 85-1 v. Mut. First, Inc.*, 35 F.3d 170, 175 (5th Cir. 1994). Here, a fact issue remains as to whether Driveline owed rebates under the 2015 Agreement, in other words there are fact issues as to whether there are mutual obligations between the parties. In essence, the Court finds that Driveline proved breach as a matter of law, but there are genuine issues of material fact as to PepsiCo's affirmative defense and whether the Court should set off the parties' mutual obligations.

### B. PepsiCo's Motion for Summary Judgment

PepsiCo also moved for summary judgment because it argues that its proper use of the setoff conclusively negates Driveline's breach of contract claim. As the Court previously addressed, genuine issues of material fact remain as to whether Driveline owed PepsiCo the rebates under the 2015 Agreement. As such, the Court finds that PepsiCo's motion for summary judgment on Driveline's breach of contract claim should be denied.

Related to this claim, PepsiCo also moved for summary judgment against Driveline's alternative unjust enrichment claim or quantum meruit claim. PepsiCo argues that because the alleged conduct arises out of an express contract, quantum meruit and unjust enrichment do not apply. "Driveline acknowledges that if it is successful on its motion for partial summary judgment that PepsiCo is liable under the express terms of the 2017 Agreement, it may not also recover in quantum meruit." (Dkt. #43 at p. 28). Although Driveline is not completely successful on its motion, the Court found that Driveline established breach as matter of law. As such, quantum meruit is not an appropriate method of recovery in this case. *See Cole v. Benavides*, 481 F.2d 559, 561 (5th Cir. 1973) (applying Texas law). Further, Driveline did not respond to PepsiCo's claim that unjust enrichment is not appropriate in this case. Because Driveline did not file a response to this argument, the Court presumes that Driveline does not controvert the facts set out by PepsiCo and Driveline and has no evidence to offer in opposition to the argument. LOCAL RULE CV-7(d) ("A party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by the movant and has no evidence to offer in opposition to the motion."). Therefore, the Court finds that PepsiCo's motion should be granted as to Driveline's claim for unjust enrichment and quantum meruit.

### III. Declaratory Judgment

PepsiCo additionally has a counterclaim for declaratory relief stating that PepsiCo is entitled to rebates under the 2015 Agreement in the amount of $285,189.86 and that PepsiCo is entitled to setoff that amount against the amount owed to Driveline under the 2017 Agreement. Driveline moves for summary judgment on the claim because it is not a justiciable controversy under the Declaratory Judgment Act and because it is wholly duplicative of PepsiCo's breach of contract claim and affirmative defense of set off. PepsiCo also moves for summary judgment

arguing that the evidence conclusively establishes PepsiCo's counterclaim for declaratory judgment as a matter of law.

As to PepsiCo's motion, the Court previously found that there are fact questions remaining surrounding the rebates and the right to setoff. Accordingly, PepsiCo's motion on its declaratory judgment claim should be denied.

Considering Driveline's motion for summary judgment, whether or not this is a proper claim under the Declaratory Judgment Act, it is redundant of PepsiCo's counterclaims and affirmative defenses. Because the substance of PepsiCo's declaratory judgment action will be resolved by the remaining claims in the suit, the Court finds it proper to grant summary judgment against PepsiCo's counterclaim for declaratory judgment. *See Duarte v. City of Lewisville*, 136 F. Supp. 3d 752, 790 (E.D. Tex. 2015) (citing *Wuenschel v. Steris Corp.*, No. 4:10–CV–7, 2010 WL 1068156, at *2 (E.D. Tex. Mar. 16, 2010)); *Xtria LLC v. Tracking Sys., Inc.*, No. 3:07-CV-0160-D, 2007 WL 1791252, at *3–*4 (N.D. Tex. June 21, 2007) (citing *Kougl v. Xspedius Mgmt. Co.*, No. Civ.A.3:04CV2519–D, 2005 WL 1421446, at *4 (N.D. Tex. June 1, 2005); *Landscape Design & Constr., Inc. v. Transport Leasing/Contract, Inc.*, No. CIV.A.3:00–CV–906–D, 2002 WL 257573, at *10 (N.D. Tex. Feb. 19, 2002)).

## CONCLUSION

It is therefore **ORDERED** Defendant PepsiCo, Inc.'s Motion for Judgment on the Pleadings (Dkt. #17) is hereby **DENIED as moot**, Plaintiff/Counterclaim-Defendant's Motion for Judgment on the Pleadings on Defendant/Counterclaim-Plaintiff's Counterclaims (Dkt. #23) is **DENIED as moot**, Plaintiff/Counterclaim Defendant's Motion for Partial Summary Judgment (Dkt. #39) is **GRANTED IN PART**, and Defendant PepsiCo, Inc.'s Motion for Summary Judgment (Dkt. #40) is **GRANTED IN PART**. The Court hereby finds that PepsiCo's failure to

make a full payment of the 2017 Invoice was a breach of the 2017 Agreement; however, genuine issues of material fact remain as to PepsiCo's affirmative defense of setoff. Further, genuine issues of material fact remain as to PepsiCo's breach of the 2015 Agreement counterclaim. Finally, PepsiCo's declaratory judgment claim and Driveline's unjust enrichment/quantum meruit claims are hereby **DISMISSED with prejudice**.

      **SIGNED this 21st day of May, 2018.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE